UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ANKOR ENERGY LLC | * | CIVIL ACTION NO. 2:20-CV-1560 |
| | * | |
| Plaintiff | * | |
| | * | JUDGE: |
| versus | * | |
| | * | |
| SANARE ENERGY PARTNERS, LLC | * | MAGISTRATE: |
| | * | |
| Defendant | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## VERIFIED COMPLAINT

NOW INTO COURT, through undersigned counsel, comes plaintiff, ANKOR Energy LLC ("ANKOR"), who files this Complaint against Sanare Energy Partners, LLC ("Sanare").

### NATURE OF CAUSE OF ACTION

1. This is a lawsuit for money damages and for recognition of statutory liens and privileges arising from Sanare's breach of various offshore operating agreements by failing to pay its share of expenses incurred by ANKOR in connection with operations conducted on the Outer Continental Shelf in the Gulf of Mexico.

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331, et seq., particularly 43 U.S.C. § 1349(b)(1) in that this action relates to disputes regarding mineral production and operational activities associated therewith on the Outer Continental Shelf ("OCS").

3. Venue is proper in this district pursuant to 43 U.S.C. § 1349(b)(1) and 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to these claims occurred on the OCS offshore Lafourche Parish, Plaquemines Parish, and Terrebonne Parish, and a substantial

1

portion of the property that is the subject of the action is situated on the OCS offshore Lafourche Parish, Plaquemines Parish, and Terrebonne Parish.

## PARTIES

4. Plaintiff, ANKOR Energy LLC, is a limited liability company organized and existing under the laws of the state of Delaware with its principal place of business in New Orleans, Louisiana.

5. Defendant, Sanare Energy Partners, LLC, is a limited liability company organized and existing under the laws of the state of Delaware with its principal place of business in Houston, Texas.

## FACTS

6. At all relevant times, ANKOR and Sanare jointly held certain rights and interests in the following OCS mineral leases:

    A.    OCS Lease No. OCS-G 26032, covering the East 1/2 of Block 208 of the Eugene Island Area of the OCS ("EI 208 Lease 1");

    B.    OCS Lease No. OCS- 0577, covering the West 1/2 of Block 208 of the Eugene Island Area of the OCS ("EI 208 Lease 2");

    C.    OCS Lease No. OCS-G 5068, covering Block 870 of the Mobile Area of the OCS ("MO 870 Lease");

    D.    OCS Lease No. OCS-G 13606, covering Block 379 of the Vermillion Area of the OCS ("VR 379 Lease");

    E.    OCS Lease No. OCS-G 28351, covering Block 21 of the Mississippi Canyon Area of the OCS ("MC 21 Lease");

    F.    OCS Lease No. OCS-G 22850, covering Block 22 of the Mississippi Canyon Area of the OCS ("MC 22 Lease");

    G.    OCS Lease No. OCS-G 21742, covering Block 65 of the Mississippi Canyon Area of the OCS ("MC 65 Lease");

H.  OCS Lease No. OCS-G 03171, covering Block 13 of the South Pelto Area of the OCS ("PL 13 Lease");

I.  OCS Lease No. OCS-G 01187, covering Block 27 of the South Marsh Island Area of the OCS ("SM 27 Lease");

J.  OCS Lease No. OCS-G 01189, covering Block 29 of the South Marsh Island Area of the OCS ("SM 29 Lease");

K.  OCS Lease No. OCS-G 01134, covering Block 191 of the Vermillion Area of the OCS ("VR 191 Lease");

L.  OCS Lease No. OCS-G 1194, covering Block 58 of the South Marsh Island Area of the OCS ("SM 58 Lease");

M.  OCS Lease No. OCS-G 17935, covering Block 68 of the South Marsh Island Area of the OCS ("SM 68 Lease");

N.  OCS Lease No. OCS-G 01201, covering Block 69 of the South Marsh Island Area of the OCS ("SM 69 Lease");

O.  OCS Lease No. OCS-G 01204, covering Block 72 of the South Marsh Island Area of the OCS ("SM 72 Lease");

P.  OCS Lease No. OCS-G 01205, covering Block 73 of the South Marsh Island Area of the OCS ("SM 73 Lease");

Q.  OCS Lease No. OCS-G 32201, covering Block 217 of the Ship Shoal Area of the OCS ("SS 217 Lease");

R.  OCS Lease No. OCS-G 01022, covering Block 218 of the Ship Shoal Area of the OCS ("SS 218 Lease");

S.  OCS Lease No. OCS-G 00830, covering Block 229 of the Ship Shoal Area of the OCS ("SS 229 Lease");

T.  OCS Lease No. OCS-G 00831, covering Block 230 of the Ship Shoal Area of the OCS ("SS 230 Lease");

U.  OCS Lease No. OCS-G 00832, covering Block 242 of the Ship Shoal Area of the OCS ("SS 242 Lease");

V.  OCS Lease No. OCS-G 32207, covering Block 290 of the Ship Shoal Area of the OCS ("SS 290 Lease"); and

  W. OCS Lease No. OCS-G 18043, covering Block 156 of the South Timbalier Area of the OCS ("ST 156 Lease").

The leases listed above are hereinafter collectively referred to as the "Leases."

  7. Operations on the Leases were at all relevant times subject to the following operating agreements:

  A. Offshore Operating Agreement dated effective December 23, 2011 covering EI 208 Lease 1, EI 208 Lease 2, the MO 870 Lease, and the VR 379 Lease, originally entered into by and between ANKOR, ANKOR E&P Holdings Corporation, STX Energy E&P Offshore Management, LLC, and SCL Resources, LLC (the "EI 208, MO 870, and VR 379 OOA");

  B. Offshore Operating Agreement dated effective February 15, 2018 covering the MC 21 Lease, the MC 22 Lease, and the MC 65 Lease, originally entered into by and between ANKOR, ANKOR E&P Holdings Corporation, KOA Energy LP, and Orinoco Natural Resources, LLC (the "MC 21, 22, and 65 OOA");

  C. Operating Agreement dated effective July 1, 1975 covering the PL 13 Lease, originally entered into by and between Mesa Petroleum Co., American Natural Gas Production Company, Oil Development Company of Texas, OXY Petroleum, Inc., and American Independent Oil Company and Basin Exploration Corp. (the "PL 13 OA");

  D. Offshore Operating Agreement dated effective February 15, 2018 covering the SM 27 Lease, the SM 29 Lease, and the VR 191 Lease, originally entered into by and between ANKOR, ANKOR E&P Holdings Corporation, KOA Energy LP, and Orinoco Natural Resources, LLC (the "SM 27, 29 and VR 191 OOA");

  E. Joint Operating Agreement II dated effective March 1, 1995 covering the SM 58 Lease and the SM 69 Lease, originally entered into by and between Shell Offshore Inc. and Taylor Energy Company (the "SM 58 and 69 JOA");

  F. Offshore Operating Agreement dated effective February 15, 2018 covering the SM 68 Lease, the SM 69 Lease, the SM 72 Lease, and the SM 73 Lease, originally entered into by and between ANKOR, ANKOR E&P Holdings Corporation, KOA Energy LP, and Orinoco Natural Resources, LLC (the "SM 68, 69, 72, and 73 OOA");

  G. Offshore Operating Agreement dated effective February 15, 2018 covering the SS 217 Lease, the SS 218 Lease, the SS 229 Lease, the SS 230 Lease,

4

and the SS 242 Lease, originally entered into by and between ANKOR, ANKOR E&P Holdings Corporation, KOA Energy LP, and Orinoco Natural Resources, LLC (the "SS 217, 218, 229, 230, and 242 OOA");

H.  Offshore Operating Agreement dated effective February 15, 2018 covering the SS 290 Lease, originally entered into by and between ANKOR, ANKOR E&P Holdings Corporation, KOA Energy LP, and Orinoco Natural Resources, LLC (the "SS 290 OOA"); and

I.  Offshore Operating Agreement dated effective March 10, 1998 covering the ST 156 Lease, originally entered into by and between Samedan Oil Corporation and Pogo Producing Company (the "ST 156 OOA").

The operating agreements listed above are hereinafter collectively referred to as the "Operating Agreements."

8. At all relevant times, ANKOR and Sanare have been parties to each of the Operating Agreements with ANKOR serving as the "Operator" and Sanare as a "Non-Operator."

9. As Operator under the Operating Agreements, ANKOR incurred certain joint operational expenses with respect to the Leases and invoiced Sanare, as Non-Operator under the Operating Agreements, for its proportionate share of those expenses through monthly joint interest billing statements ("JIBs").

10. Under the express terms of the Operating Agreements, Sanare was required to pay its proportionate share of the JIBs within the time period specified under each Operating Agreement.

11. Despite written notice and demand by ANKOR, Sanare has failed to pay its share of the JIBs within the periods required under the Operating Agreements and remains indebted for its proportionate share.

12. The total amount owed under the Operating Agreements for costs incurred by ANKOR through the April 2020 billing period, exclusive of interest, attorneys' fees, and collection/court costs is $4,425,630.99. Additional costs continue to accrue on a monthly basis.

13. A breakdown of the costs owed under each Operating Agreement is as follows:

| Operating Agreement | Amount Owed |
|---|---|
| EI 208, MO 870, and VR 379 OOA | $590,945.83 |
| MC 21, 22, and 65 OOA | $1,043,206.12 |
| PL 13 OA | $9,055.74 |
| SM 27, 29 and VR 191 OOA | $505,607.97 |
| SM 58 and 69 JOA | $6,077.46 |
| SM 68, 69, 72, and 73 OOA | $982,810.58 |
| SS 217, 218, 229, 230, and 242 OOA | $1,241,999.39 |
| SS 290 OOA | $15,902.18 |
| ST 156 OOA | $30,025.72 |
| **Total Due: $4,425,630.99** | |

14. Sanare's obligations to pay $4,346,842.52 of the $4,425,630.99 due are secured by liens and privileges in favor of ANKOR under the Louisiana Oil Well Lien Act La. R.S. §§ 9:4881, et seq. ("LOWLA"). On a lease-by-lease basis, ANKOR's liens and privileges under LOWLA secure Sanare's obligations as to each lease in the principal amounts shown below:

| Lease | Principal Amount |
|---|---|
| EI 208 Lease 1 | $39,545.01 |
| EI 208 Lease 2 | $292,553.36 |
| VR 379 Lease | $241,120.08 |
| MC 21 Lease | $301,634.96 |
| MC 22 Lease | $653,456.77 |
| MC 65 Lease | $88,114.40 |
| SM 27 Lease | $265,284.83 |
| SM 29 Lease | $59,924.54 |
| VR 191 Lease | $180,398.60 |
| SM 68 Lease | $34,871.30 |
| SM 69 Lease | $142,259.56 |
| SM 72 Lease | $94,973.77 |
| SM 73 Lease | $710,705.95 |
| SS 217 Lease | $24,531.63 |
| SS 218 Lease | $297,637.75 |
| SS 229 Lease | $740,948.90 |
| SS 230 Lease | $56,820.46 |
| SS 242 Lease | $122,060.65 |
| **Total: $4,346,842.52** | |

The foregoing Leases are hereinafter collectively referred to as the "Encumbered Operating Interests."

15.  To preserve its liens and privileges with respect to the Encumbered Operating Interests, ANKOR recorded the following documents in the form required by LOWLA on May 27, 2020:

    A.  Lien Affidavit, Notice of Claim of Lien, and Statement of Operator's Privilege recorded in the mortgage records of St. Mary Parish (Mortgage Book 1592, Page 425, File Number 334512) and Vermillion Parish (Mortgage Instrument Number 2020003474) in the total amount of $573,218.45 against Sanare's interest in and to EI 208 Lease 1, EI 208 Lease 2, and the VR 379 Lease;

    B.  Lien Affidavit, Notice of Claim of Lien, and Statement of Operator's Privilege recorded in the mortgage records of Plaquemines Parish (Mortgage Book 768, Page 259, File Number 2020-1781) in the total amount of $1,043,206.12 against Sanare's interest in and to the MC 21 Lease, the MC 22 Lease, and the MC 65 Lease;

    C.  Lien Affidavit, Notice of Claim of Lien, and Statement of Operator's Privilege recorded in the mortgage records of Iberia Parish (Mortgage Book 1903, Page 336, File Number 2020-3833) and Vermillion Parish (Mortgage Instrument Number 2020003475) in the total amount of $505,607.97 against Sanare's interest in and to the SM 27 Lease, the SM 29 Lease, and the VR 191 Lease;

    D.  Lien Affidavit, Notice of Claim of Lien, and Statement of Operator's Privilege recorded in the mortgage records of Iberia Parish (Mortgage Book 1903, Page 342, File Number 2020-3834) and Vermillion Parish (Mortgage Instrument Number 2020003473) in the total amount of $982,810.58 against Sanare's interest in and to the SM 68 Lease, the SM 69 Lease, the SM 72 Lease, and the SM 73 Lease; and

    E.  Lien Affidavit, Notice of Claim of Lien, and Statement of Operator's Privilege recorded in the mortgage records of Terrebonne Parish (Mortgage Book 3153, Page 119, File Number 1603320) in the total amount of $1,241,999.39 against Sanare's interest in and to the SS 217 Lease, the SS 218 Lease, the SS 229 Lease, the SS 230 Lease, and the SS 242 Lease.

Copies of the foregoing lien filings are attached hereto, *in globo*, as Exhibit A.

16. Pursuant to La. R.S. § 9:4883, ANKOR's lien and privilege under LOWLA encumbers Sanare's interests in the following:

    A.    The Encumbered Operating Interests;

    B.    Wells, buildings, tanks, leasehold pipelines, and other constructions or facilities located on the well sites of the Encumbered Operating Interests;

    C.    Movables on the well sites that are used in operations, other than movables only transiently on the well sites for repair, testing, or other temporary use;

    D.    Tracts of land, servitudes, and leases described in La. R.S. § 9:4861(12)(c) covering the well sites of the Encumbered Operating Interests;

    E.    Hydrocarbons produced from the Encumbered Operating Interests; and

    F.    Production proceeds received by, and the obligations owed to, Sanare for the sale of its interest in and to said hydrocarbons.

The above listed property is hereinafter collectively referred to as the "Encumbered Property."

17. Despite failing to pay its share of expenses, Sanare has received production proceeds from the Encumbered Property from Sanare's purchaser of production, Shell Trading (US) Company ("Shell").

18. ANKOR believes that Shell and/or other purchasers of Sanare's production may currently possess, or will possess during the pendency of this litigation, hydrocarbon production and/or proceeds from the Encumbered Property and that Sanare will seek to continue receiving production proceeds from the Encumbered Property during the pendency of this lawsuit.

## CAUSES OF ACTION

**I.**    **Count One: Breach of Contract**

19. The allegations contained in paragraphs 1 through 18 above are incorporated herein by reference.

20. Under the express terms of the Operating Agreements, Sanare agreed that it would pay its proportionate share of costs incurred by ANKOR in connection with the Leases as reflected on the JIBs issued by ANKOR to Sanare.

21. Sanare breached its obligations to ANKOR by failing to pay its share of the JIBs.

22. Sanare owes ANKOR the sum of $4,425,630.99 as a result of said breach in addition to Sanare's proportionate share of any future accruing invoices. ANKOR is also entitled to legal or contractual interest, late fees and penalties, any costs incurred in connection with the collection of these unpaid amounts, and all reasonable attorneys' fees provided by contract, law, equity or otherwise.

## II.   Count Two: Recognition of Validity and Enforceability of Privilege under LOWLA

23. The allegations contained in paragraphs 1 through 22 above are incorporated herein by reference.

24. Pursuant to La. R.S. § 9:4883, ANKOR's liens and privileges under LOWLA encumbers the Encumbered Property for the sums due now and for any invoices that have accrued or will accrue in the future.

25. ANKOR is entitled to recognition of the validity and enforceability of its liens and privileges under LOWLA.

## III.   Count Three: Writ of Sequestration

26. The allegations contained in paragraphs 1 through 25 above are incorporated herein by reference.

27. Sanare has the power to conceal, dispose of, waste, or remove the Encumbered Property and the revenues therefrom during the pendency of this litigation.

9

28.     Pursuant to Rule 64 of the Federal Rules of Civil Procedure, ANKOR may utilize all state law remedies providing for seizure of property, including, but not limited to, the remedy of sequestration, which is available to ANKOR in accordance with La. R.S. § 9:4889, La. R.S. § 9:4871, and La. Code Civ. Proc. art. 3571, et seq.  In addition, La. R.S. § 9:4889 and La. R.S. § 9:4871 expressly permit ANKOR to enforce its privilege by a writ of sequestration without the necessity of furnishing security.

29.     To protect ANKOR's liens and privileges, ANKOR may at the appropriate time seek a writ of sequestration directing the marshal to seize any and all encumbered properties to which ANKOR's lien attaches, including but not limited to, all production proceeds due and owing to Sanare from any purchasers of Sanare's production from the Encumbered Operating Interests.

### ATTORNEYS' FEES

30.     ANKOR is entitled to an award of attorney fees pursuant to express provisions of the Operating Agreements as well as under La. R.S. § 9:2781.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff, ANKOR Energy LLC, respectfully requests that this Court enter final judgment as follows:

(i)     Money judgment in favor of ANKOR and against Sanare in the sum of $4,425,630.99 for costs due under the Operating Agreements as of the April 2020 billing period plus any additional amounts that become due and owing under the Operating Agreements through the date of judgment, together with legal and contractual interest, all costs incurred in connection with the collection of these unpaid amounts, and all attorneys' fees as provided by contract and/or law;

(ii)  Judgment in favor of ANKOR and against Sanare recognizing and maintaining the validity and enforceability of ANKOR's liens and privileges against the Encumbered Property; and

(iii) All other equitable and general relief to which ANKOR may be entitled.

Respectfully submitted,

**LOOPER GOODWINE P.C.**

By: /s/ *Paul J. Goodwine*
Paul J. Goodwine (T.A.)
LA Bar No. 23757
Taylor P. Mouledoux
LA Bar No. 31889
Taylor P. Gay
LA Bar No. 35140
650 Poydras Street, Suite 2400
New Orleans, Louisiana 70130
Telephone: (504) 503-1500
Telecopier: (504) 503-1501
pgoodwine@loopergoodwine.com
tmouledoux@loopergoodwine.com
tgay@loopergoodwine.com

ATTORNEYS FOR ANKOR ENERGY LLC