UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ANKOR ENERGY LLC | * | CIVIL ACTION NO. 2:20-CV-1560 |
| | * | |
| Plaintiff | * | |
| | * | JUDGE GREG GERARD GUIDRY |
| versus | * | |
| | * | |
| SANARE ENERGY PARTNERS, LLC | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| Defendant | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## ANKOR'S MEMORANDUM IN OPPOSITION TO
## SANARE'S EMERGENCY MOTION FOR RECONSIDERATION (DKT. 21)

ANKOR Energy LLC ("ANKOR") respectfully submits this opposition to the emergency motion for reconsideration (Dkt. 21) (the "Motion") filed by Sanare Energy Partners, LLC ("Sanare"). Sanare's Motion requests that the Court reconsider its orders granting ANKOR'S Ex Parte Motion for Issuance of Writ of Sequestration (Dkt. 9), the Writ of Sequestration (Dkt. 10), and ANKOR's Ex Parte Motion Pursuant to La. R.S. § 13:3862 for Order Compelling Defendant to Deliver Property (Dkt. 11) (collectively, the "Orders").

This Court should uphold the Orders. ANKOR is entitled to the relief granted in the Orders under applicable Louisiana law, and it was allowed to seek such relief ex parte. Sanare had full notice and ample opportunity (at least eighteen days) to respond to ANKOR's motions but chose not to. Rather than take responsibility for its failure to file a response, Sanare now blames ANKOR for its inaction, claiming that ANKOR acted "secretly" and "inappropriate[ly]" in obtaining the Orders. Dkt. 21, at pp. 1-2; Dkt. 21-7, at p. 1. As shown below, this is patently false. ANKOR sent the pleadings to Sanare immediately after filing them, and Sanare was officially served in the lawsuit before the pleadings were filed. Despite Sanare's repeated misrepresentation of the facts in its Motion, Sanare has failed to justify its failure to oppose ANKOR's motions and has not

1

presented any new evidence or manifest injustice warranting reconsideration of the Orders. Sanare's Motion should be denied.

## BACKGROUND

On May 28, 2020, ANKOR filed its Verified Complaint against Sanare, seeking money damages in the sum of $4,346,842.52 and recognition and enforcement of ANKOR's liens and privileges under the Louisiana Oil Well Lien Act ("LOWLA") as a result of Sanare's failure to pay its share of joint interest billings over the past several months. Dkt. 1. Sanare was officially served with ANKOR's complaint on June 1, 2020. Dkt. 6. Thereafter, on June 5, 2020, ANKOR exercised its rights under LOWLA and related law to preserve the property encumbered by its liens and privileges by filing an Ex Parte Motion for Issuance of Writ of Sequestration (the "Sequestration Motion") and a companion Ex Parte Motion Pursuant to La. R.S. § 13:3862 for Order Compelling Defendant to Deliver Property (the "Turnover Motion") (collectively, the "Sequestration/Turnover Motions"). Dkts. 7-8.

Because the Sequestration/Turnover Motions were filed ex parte, ANKOR was not required to serve them on Sanare. *See* Fed. R. Civ. P. 5(a)(1)(D). Nevertheless, as a professional courtesy recommended by counsel for ANKOR to ANKOR representatives, ANKOR sent the Sequestration/Turnover Motions to Sanare via email and ANKOR's counsel sent them to Sanare via U.S. mail on the same day that they were filed. *See, e.g.*, Dkt. 7, at p. 3; Dkt. 8, at p. 3. As shown on Exhibit A attached hereto, Mr. Henry Welch (ANKOR's Chief Executive Officer, Acting President, and Chief Operating Officer) emailed all of the pleadings, including the Sequestration/Turnover Motions, to Mr. Charles Rougeau (Sanare's President and Chief Executive Officer) on June 5, 2020. Despite receiving notice of the Sequestration/Turnover Motions by the

email transmittal from Mr. Welch and U.S. mail, Sanare never filed an opposition or response to ANKOR's motions.

On June 8, 2020, after ANKOR filed the Sequestration/Turnover Motions, Sanare's counsel, for the first time, reached out to ANKOR's counsel to discuss a partial payment of $1,720,770.64 as a precursor to ultimate settlement discussions.  On June 10, 2020, Sanare wired $1,720,770.64 to ANKOR.  Dkt. 21-2.  At that time, counsel discussed potential methods to recognize the payment in the lawsuit and how to foster settlement discussions, but no actual agreement as to a process relating thereto or what action could or would be taken in relation to the pending Sequestration/Turnover Motions occurred.  And in those discussions, ANKOR's counsel never granted Sanare an extension to answer, promised to amend its complaint, or indicated that it would take any action in relation to the pending Sequestration/Turnover Motions.

On June 22, 2020, nearly two weeks after the $1,720,770.64 payment was made, Sanare missed its deadline to answer ANKOR's complaint.  Rather than immediately pursue default proceedings, ANKOR's counsel called Sanare's counsel as a professional courtesy on June 23, 2020 to determine whether and when Sanare intended to file an answer.  Sanare's counsel was under the mistaken impression that ANKOR had granted it an extension to file its answer until after ANKOR amended its complaint to reflect the partial payment of $1,720,770.64.  ANKOR's counsel denied that it had ever granted an extension but agreed to discuss allowing Sanare additional time to answer the complaint with its client.

Counsel for the parties continued to discuss the issue over the next several days, but in none of those discussions did ANKOR or its counsel agree to withdraw the then-pending Sequestration/Turnover Motions.  Despite no agreement, as this Court is aware, ANKOR took no affirmative steps (other than its initial filing of the Sequestration/Turnover Motions) to get the

3

motions granted.  Counsel for ANKOR simply let them sit on the record awaiting a response from Sanare or an order from this Court as settlement dynamics between the parties unfolded.

While counsels' discussions regarding Sanare's answer to the complaint remained ongoing and unresolved, the Court entered the Orders granting the Sequestration/Turnover Motions on June 23, 2020 and June 24, 2020, respectively, and the Clerk issued the Writ of Sequestration on June 23, 2020.  Dkts. 9-11.  Following entry of the Orders, on June 25, 2020, ANKOR agreed to allow Sanare until June 29, 2020 to submit an answer to the Verified Complaint and agreed not to take further action to enforce the Orders or the Writ of Sequestration until Sanare submitted its answer. ANKOR's counsel sent an email to Sanare's counsel to that effect on June 25, 2020.  *See* Dkt. 21-4.  Sanare filed its answer and the instant Motion on June 29, 2020 (refiled on June 30, 2020).  To date, in an effort to continue to promote settlement discussions, ANKOR has continued to refrain from exercising any rights under the sequestration/turnover Orders.

## LEGAL STANDARD

Reconsideration "is not to be granted lightly" as it "is an extraordinary remedy that should be used sparingly."  *Lightfoot v. Hartford Fire Ins. Co*., No. 07-4833, 2012 WL 711842, at *3 (E.D. La. Mar. 5, 2012) (internal citations omitted).  Such motions "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* (internal citations omitted).  "When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted."  *Id.*

Here, Sanare claims that reconsideration is warranted under Rule 59(e) of the Federal Rules of Civil Procedure due to the "availability of new evidence not previously available" and "the need to correct a clear error of law or prevent manifest injustice."  Dkt. 21-7, at p. 1.  Sanare, however,

has not presented any new evidence to justify reconsideration and has not cited to any manifest example of clear error on the part of this Court in granting the Sequestration/Turnover Motions. Sanare's Motion should be denied.

<strong>ARGUMENT</strong>

**I.      Sanare Has Presented No New Evidence to Justify Reconsideration**

Sanare claims that its partial payment of $1,720,770.64 constitutes "new evidence not previously available" as required for reconsideration by Rule 59(e) of the Federal Rules of Civil Procedure.  The payment, however, is not "new evidence" because evidence of the payment was available to Sanare prior to the Court's Orders.  Moreover, this "new evidence" would not merit reconsideration because it has no bearing on the merits of the Sequestration/Turnover Motions.

ANKOR filed the Sequestration/Turnover Motions on June 5, 2020.  Dkts. 7-8.  ANKOR sent the pleadings to Sanare on that day, and, by that time, Sanare had already been served with the Verified Complaint.  *See* Exhibit A; Dkt. 6.  On June 10, 2020, Sanare made the $1,720,770.64 partial payment.  Dkt. 21-2.  Thirteen days after the payment, on June 23, 2020, the Court granted the Sequestration Motion and granted the Turnover Motion the next day.  Dkts. 9 and 11.  Thus, between the time that Sanare made the payment and before the Court granted the Orders, Sanare could have filed an opposition to the Sequestration/Turnover Motions and referenced the $1,720,770.64 payment, but it never did.  Because Sanare could have notified the Court of the payment before the Orders were entered, evidence of the $1,720,770.64 partial payment does not meet the "new evidence" standard for reconsideration as provided by Rule 59(e) of the Federal Rules of Civil Procedure.  *See Foster v. Principal Life Ins. Co*., 303 F. Supp. 3d 471, 481 (E.D. La. 2018).  Regardless, partial payment is not full payment and ANKOR's unequivocal rights to sequestration as recognized by LOWLA still exist for the balance of the amount due.

Instead of acknowledging its failure to oppose the Sequestration/Turnover Motions, Sanare blames ANKOR for its inaction, claiming that ANKOR should have notified the Court of the $1,720,770.64 payment by amending its complaint.  ANKOR, however, had no obligation to amend its complaint to reflect the partial payment, and Sanare cites no authority to suggest otherwise.[1]  There is also no evidence that ANKOR ever agreed to amend its complaint aside from the self-serving email from Sanare's counsel sent *after* Sanare failed to answer ANKOR's complaint.  *See* Dkt. 21-1 (sent on June 23, 2020, the day after Sanare's June 22, 2020 answer deadline).[2]

Moreover, even if the $1,720,770.64 payment did constitute "new evidence not previously available," Sanare never explains why the payment would warrant a reconsideration of the Orders. As provided by the United States Court of Appeals for the Fifth Circuit, "[a] motion to reconsider based on alleged discovery of new evidence should be granted only if . . . the facts discovered are of such a nature that they would probably change the outcome . . . ." *Ferraro v. Liberty Mut. Fire Ins. Co.*, 796 F.3d 529, 534 (5th Cir. 2015).  Sanare has not met its burden to show that consideration of the $1,720,770.64 partial payment "would probably change the outcome" of the Orders.  LOWLA gives ANKOR the explicit right to enforce its liens and privileges against Sanare "by a writ of sequestration, without the necessity of furnishing security."  La. R.S. § 9:4871; *see also* La. R.S. § 9:4889.  ANKOR was also entitled to a writ of sequestration under Louisiana Code of Civil Procedure articles 3571 to 3576 because it is within Sanare's power to conceal, dispose

---

[1] It would be impractical to require ANKOR to amend its complaint every time the amount of damages changes, especially since the damages number here is dynamic and is increasing every month due to Sanare's ongoing failure to pay its monthly joint interest billings.

[2] Sanare's claim that "when Ankor requested *ex parte* entry of the Order, it did so knowing that Sanare was represented by counsel and that the amounts listed in the Complaint were inaccurate" is distinctly false. Dkt. 21-7, at p. 2. ANKOR did not receive the payment until June 10, 2020, five days *after* the pleadings were filed on June 5, 2020.  *See* Dkts. 7, 8, and 21-2.  In addition, Sanare's counsel never made an appearance in the case before the Orders were entered, and ANKOR's counsel did not learn that Sanare was represented until June 8, 2020.

of, waste, or remove the encumbered property during the pendency of this action.  In fact, Sanare admits in its Motion to using the encumbered property "to pay its expenses in the ordinary course of business to vendors, royalty owners, employees, and third parties," which further evidences the necessity of the Orders.  Dkt. 21-7, at p. 4.

ANKOR was entitled to the relief granted in the Orders, and evidence of the $1,720,770.64 payment does not change that.  In addition, it is well settled that ANKOR was allowed to seek the Sequestration/Turnover Motions ex parte, so ANKOR's complaints in that respect are immaterial. *See, e.g.*, *Mitchell v. W. T Grant Co*., 416 U.S. 600, 603-20 (1974); *Rocket Industries, Inc. v. Southern Tire & Supply, Inc*., 706 F.2d 561 (5th Cir. 1983) (upholding district court's order issuing a writ of sequestration on plaintiff's ex parte application);  La. R.S. § 13:3862 ("**On ex parte motion** . . . the court may order that money or other property on the person of the party against whom the order is directed, or otherwise in his possession or under his control, be delivered to the sheriff immediately upon personal service of the order.").

ANKOR was, and remains, entitled to the relief sought in the Sequestration/Turnover Motions, and Sanare has provided no "evidentiary" basis for reconsideration.  Reconsideration of the Orders here would be a waste of judicial time and should be denied.

## II.   Sanare Failed to Demonstrate Any Clear Error or Manifest Injustice in the Court's Orders

Just as it has provided this Court with no new evidence, Sanare has also failed to identify any clear error in the Court's Orders or show how the Court's Orders result in manifest injustice against Sanare.  As a preliminary matter, it should be noted that Sanare has waived any arguments it had against the Orders by raising them for the first time in a motion to reconsider rather than in a timely response to the Sequestration/Turnover Motions.  *See LeClerc v. Webb*, 419 F.3d 405, 412 n.13 (5th Cir. 2005) ("A motion for reconsideration may not be used to . . . introduce new

arguments.").  In any case, Sanare's three arguments alleging legal error and manifest injustice provide no legitimate basis for the Court to reconsider the Orders.

*First*, Sanare's claim, that ANKOR did not give "it an opportunity to challenge the requested relief" is not true.  Dkt. 21-7, at p. 3.  As explained above, ANKOR sent the pleadings to Sanare on the day that they were filed, and Sanare had already been served with the complaint in the case.  *See* Exhibit A; Dkt. 6.  The Court did not enter its Order on the Sequestration Motion until eighteen days after the Sequestration Motion was filed, and the Court entered its Order on the Turnover Motion nineteen days after it was filed.  *See* Dkts. 7, 8, 9, and 11.  Sanare, therefore, had ample time and opportunity to challenge the requested relief, but chose not to.  Sanare's choice to not oppose the Sequestration/Turnover Motions does not render the Orders erroneous or manifestly unjust, especially here, where these motions were properly decided ex parte.  *See, Mitchell*, 416 U.S. 600; *Rocket Industries*, 706 F.2d 561; La. R.S. § 13:3862.

Sanare's claim that ANKOR was "improper and inconsistent with its commitments" is also untrue.  Dkt. 21-7, at p. 3.  Specifically, Sanare alleges that ". . . Ankor's counsel represented that it would take no action until an answer was filed.  Ankor violated that commitment by obtaining the Orders without notifying Sanare or giving it an opportunity to challenge the requested relief."  Dkt. 21-7, at p. 3.  In truth, ANKOR's counsel never discussed not acting upon the Orders until **<u>after</u>** the Orders had already been entered.  This is reflected in the email sent by ANKOR's counsel to Sanare's counsel on <u>June 25, 2020</u> – after both Orders were entered – in which ANKOR's counsel provided, out of courtesy, that ANKOR would not "act on" the Orders until Sanare had a chance to file its answer.  Dkt. 21-4.  Consistent with this representation, ANKOR has not taken any action to enforce the Orders (such as seizing the other Encumbered Property subject to the Writ of Sequestration) since sending its email of June 25.

***Second***, Sanare's claim that ANKOR failed to comply with the operating agreements' dispute resolution provisions is likewise unpersuasive and is nothing more than a delay tactic. The relief sought in ANKOR's motions derives from statutory law, specifically LOWLA, and is not dependent on any contract provision. Nevertheless, the operating agreement attached to Sanare's Motion specifically allows ANKOR to collect unpaid costs and enforce its lien and security rights against Sanare "immediate[ly]" upon its failure to pay within the time required by the contract. Article 8.6.6 of the operating agreement, titled "Unpaid Charges," provides in part:

> If such payment is not made timely by the non-paying party after the issuance of such notice to pay, the signatory requesting such payment may take **immediate steps to diligently pursue collection of the unpaid costs** and other expenses owed by such Participating Party, to collect consequential damages as a result of the default, **and to exercise the mortgage and security rights** granted by this Agreement.

Dkt. 21-5 (sealed), at § 8.6.6 (emphasis added).[3]

Nowhere does Article 8.6.6 require non-binding mediation or reference Article 19.9. And, requiring ANKOR to pursue non-binding mediation pursuant to Article 19.9, which lacks any time limit for resolution, would directly contradict ANKOR's ability under Article 8.6.6 to "immediate[ly]" and "diligently" pursue its lien rights against Sanare's interests. Article 8.6.6 speaks to the precise issue as to how and when ANKOR may pursue Sanare for unpaid costs and, therefore, controls over the more general Article 19.9. *See Claimant ID 100218776 v. BP Expl. & Prod., Inc.*, 712 F. App'x 372, 375 (5th Cir. 2017) ("It is . . . well-settled that where a general provision and a narrow, specific provision overlap and the specific provision fits the facts at hand, the specific provision controls. This prevents the general provision from swallowing the specific,

---

[3] ANKOR notified Sanare of its failure to pay through notices of default sent on February 11, 2020 and March 16, 2020. *See* Exhibit B attached hereto. Since receiving the notices, Sanare itself never sought to submit the dispute to a mediator as contemplated by Article 19.9.

and it gives effect to every clause in a contract.").  ANKOR has fully complied with the operating agreement, and Article 19.9 cannot be read to undermine ANKOR's ability to immediately exercise its lien rights through the Sequestration/Turnover Motions.

*Third*, Sanare's argument that the Court misapplied LOWLA is wrong.  *See* Dkt. 21-7, at p. 4.  Sanare claims that it is protected by the "safe harbor" provision of LOWLA; however, that provision does not apply to Sanare.  The "safe harbor" provision that Sanare relies on, namely La. R.S. § 9:4869(A)(1)(a), applies only to a "third person" (such as a purchaser of Sanare's production).  *See* La. R.S. § 9:4869(A)(1)(a) (providing that the privilege "is extinguished or becomes ineffective **as to a third person** . . . in the following ways . . . .") (emphasis added).  Because Sanare does not qualify as a "third person" under the statute, the "safe harbor" provision has no effect on the validity of ANKOR's liens vis-à-vis Sanare.  La. R.S. § 9:4861 (defining "third person" as a person "who is not contractually bound to the claimant for the obligation secured by a privilege . . . ."); *see also* Patricia H. Chicoine, *Lien on LOWLA; It's A Privilege: Recent Revisions to the Louisiana Oil Well Lien Act*, 57 LA. L. REV. 1133, 1157 (1997) ("Again, however, the effects of the above-described provisions extend only to 'third persons'; thus, the privilege will continue to encumber hydrocarbons and their proceeds to the extent parties are in actual privity.").

The Court's Orders were warranted and proper under LOWLA and other relevant law. Sanare has not articulated any substantive basis for the Court to rethink the Orders, and, as such, its Motion should be denied.

## CONCLUSION

For the foregoing reasons, ANKOR respectfully requests that Sanare's Motion be denied.

Respectfully submitted,

**LOOPER GOODWINE P.C.**

By: /s/ *Paul J. Goodwine*
Paul J. Goodwine (T.A.)
LA Bar No. 23757
Taylor P. Mouledoux
LA Bar No. 31889
Taylor P. Gay
LA Bar No. 35140
650 Poydras Street, Suite 2400
New Orleans, Louisiana 70130
Telephone: (504) 503-1500
Telecopier: (504) 503-1501
pgoodwine@loopergoodwine.com
tmouledoux@loopergoodwine.com
tgay@loopergoodwine.com

ATTORNEYS FOR ANKOR ENERGY LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing pleading has been

served on all counsel of record for the parties via e-mail, FedEx and/or by electronic filing in the

Court's electronic filing system on this 2nd day of July 2020

/s/ *Paul J. Goodwine*
Paul J. Goodwine